T.C. Memo. 2003-214

UNITED STATES TAX COURT

CYNTHIA EMERY WEIGHT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6932-01.               Filed July 16, 2003.

<u>Jan R. Pierce</u>, for petitioner.

<u>Robert V. Boeshaar</u>, for respondent.

MEMORANDUM OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Special Trial
Judge Lewis R. Carluzzo pursuant to section 7443A(b)(5) and Rules
180, 181 and 183.[1]  The Court agrees with and adopts the opinion
of the Special Trial Judge, which is set forth below.

_____

[1] Section references are to the Internal Revenue Code of
1986, as amended.  Rule references are to the Tax Court Rules of
Practice and Procedure.

OPINION OF THE SPECIAL TRIAL JUDGE

CARLUZZO, Special Trial Judge:  In a final notice of determination, dated March 8, 2001, respondent denied petitioner's claim for section 6015(f) relief from her unpaid 1996 Federal income tax liability.  In a timely petition, filed May 24, 2001, petitioner requests this Court to review respondent's determination.  Our jurisdiction to do so is established by section 6015(e), see Ewing v. Commissioner, 118 T.C. 494, 496-497 (2002), and we review respondent's determination for abuse of discretion, Butler v. Commissioner, 114 T.C. 276, 292-293 (2000).

## Background

Some of the facts have been stipulated and are so found.  At the time the petition was filed in this case, petitioner resided in Hillsboro, Oregon.

Petitioner and Ronald R. Weight were married on February 14, 1992, they separated in 1997, and were divorced by a Stipulated Judgment of Dissolution of Marriage, effective February 26, 1998(the divorce decree).  They have one child, Aaron Cyrill Weight.[2]  Petitioner also has at least one other child, Sarah C. Weight, who presumably was a minor during 1996.  Mr. Weight is not the father of Sarah C. Weight.  In 1998, Sarah C. Weight

---

[2]  In the divorce decree, the date of birth for this child is listed as December 5, 1977.  We assume that the reference to 1977 is an error.

sustained serious injuries when she fell off the horse she was riding. Since that time she has received and continues to receive medical treatment for those injuries.

Mr. Weight was hospitalized for a psychiatric disorder from October 30 through November 20, 1996, and then again from November 27 through December 3 of that year. During the former period of hospitalization, petitioner presented Mr. Weight with a Hardship Withdrawal Request Form (the form) in which he requested a $35,000 withdrawal (the distribution) from his Maxim Integrated Products 401(K) Plan (the plan). The form was signed by Mr. Weight on November 17, 1996, and by the plan administrator on November 27, 1996.

According to a statement contained in the form, the distribution was necessary "to prevent the foreclosure on the mortgage of * * * [petitioner's and Mr. Weight's] principal residence". The net proceeds of the distribution, that is $25,200 ($35,000 minus Federal and State withholding taxes of $9,800), were paid by check dated December 3, 1996.

On December 14, 1996, a deposit of $20,276 was made into a saving account held in trust for Sarah C. Weight (the savings account). Petitioner is the custodian of the savings account. As best as can be determined from the record, the source of this deposit was the proceeds from the distribution.

During 1996, in addition to the distribution from the plan, withdrawals totaling $31,700 were made from retirement accounts held by petitioner or Ronald R. Weight. It appears that these withdrawals were used in connection with the purchase of a house by petitioner and Mr. Weight. Presumably, this house is the "principal residence" referred to in the form.

Petitioner's Federal income tax return (the separate return) was timely filed. The separate return was prepared by a paid income tax return preparer. On the separate return, petitioner listed her filing status as a head of household. She claimed dependency exemption deductions for Aaron Weight and Sarah Weight. She elected to itemize deductions and claimed deductions for mortgage interest and real estate taxes in the amounts of $10,476 and $2,165, respectively. Deductions claimed exceed income reported; consequently there is no section 1 income tax liability reported on the return. Taking into account an earned income credit of $2,870 and withholdings, she claimed a refund of $3,767, which she apparently received in due course.

The divorce decree, which was issued after the separate return had been filed, provides that petitioner and Mr. Weight "shall jointly file 1996 State and Federal tax returns" and that each "shall be responsible for one half of any liability owing on those joint returns". In this regard, petitioner and Mr. Weight filed an untimely joint Federal income tax return (the joint

return).  The joint return was prepared by the same paid income tax return preparer who prepared the separate return. Arrangements for the filing of the joint return were made by the attorney representing petitioner in connection with her divorce from Mr. Weight.  The income and deductions reported or claimed on the separate return are reported or claimed on the joint return.  In addition to other items, pension income of $66,700 is reported on the joint return.  Most of the pension income is attributable to Mr. Weight.  Respondent subtracted the refund claimed on the separate return from the amount of withholding and prepayment credits claimed on the joint return.[3]  The unpaid income tax liability arising from the joint return is $15,536. Interest of $3,568, a $3,496 "late filing penalty", and a $1,584 "failure to pay tax penalty" were assessed after the return was filed.

Over the years, Mr. Weight and petitioner made payments toward the income tax liability established by the joint return. Without taking into account accrued but unassessed interest, as of April 17, 2002, petitioner's joint and several outstanding 1996 Federal income tax liability was $1,848.

---

[3]  Because a substantial portion of the refund claimed on the separate return results from the earned income credit, that portion of the refund is, in effect, recovered from withholding credits attributable to Mr. Weight.

Petitioner's section 6015(f) administrative claim for relief was made, presumably in writing, on August 8, 1999. We cannot tell what statements, allegations, specific claims, etc. were made in her administrative claim because the document, if it exists, has not been made part of the record. Nevertheless, it is clear from the petition, amended petition, second amended petition, and statements made at trial by petitioner's counsel that petitioner's claim for relief in this proceeding does not include the refund of any payments previously made with respect to her 1996 Federal income tax liability.

As noted, petitioner's administrative claim for section 6015(f) relief was denied by notice of final determination dated March 8, 2001. In that notice, respondent: (1) Acknowledges receipt of petitioner's August 8, 1999, "request for innocent spouse relief under section 6015(f)"; (2) advises petitioner that respondent "cannot allow" petitioner's claim and that, therefore, "both persons who signed the joint return remain responsible for paying the tax"; and (3) advises petitioner of her right to petition this Court to request a review of respondent's denial of her claim.

## Discussion

In general, if a taxpayer elects to file a joint Federal income tax return with his or her spouse, then the taxpayer and the taxpayer's spouse are jointly and severally liable for the

tax shown on the return or otherwise determined to be due. Sec. 6013(d)(3); Cheshire v. Commissioner, 115 T.C. 183, 188 (2000), affd. 282 F.3d 326 (5th Cir. 2002). In certain situations and subject to a variety of conditions, section 6015 provides for relief from the joint and several liability that arises from a joint return.

If a taxpayer does not qualify for relief under subsection (b) or subsection (c) of section 6015, then under procedures prescribed in Rev. Proc. 2000-15, 2000-1 C.B. 447, the Commissioner has discretionary authority to relieve the taxpayer from joint and several liability for a particular year if, "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)" for that year. Sec. 6015(f). Some of the factors the Commissioner will take into account in considering a taxpayer's claim for section 6015(f) relief are specifically set forth in the above-referenced revenue procedure.

In this case, petitioner relies upon section 6015(f) in support of her claim for relief from the balance of the unpaid income tax liability arising from the joint return. At trial, petitioner indicated that the outstanding 1996 liability roughly approximated the "late filing penalty" imposed pursuant to section 6651(a)(1) and, for the most part, limited her claim to

relief from that "penalty".  As petitioner views the situation, she should not be liable for the "penalty" because her separate return was timely filed.  Petitioner points out that the untimely joint return was filed in accordance with the divorce decree[4] and under the circumstances it would be unfair to subject her to the "penalty".  According to petitioner, respondent's refusal to grant her relief from that "penalty" is an abuse of discretion.

In order to establish that respondent's denial of her section 6015(f) claim for relief is an abuse of discretion, the evidence must demonstrate that in not granting relief, the Commissioner exercised his discretion arbitrarily, capriciously, or without sound basis in law or fact.  Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Petitioner was aware of the distribution and other pension withdrawals that resulted in the unpaid income tax liability reported on the joint return.  Proceeds from the distribution were deposited into her daughter's saving account, which petitioner controlled.  The distribution and other pension withdrawals were used to purchase and pay the mortgage on petitioner's house.  The joint return was prepared by the same

---

[4] Petitioner argues that the joint return is not valid because she did not make a "voluntary" election to file a joint return with Mr. Weight.  We note that the argument is inconsistent with a claim for relief under section 6015, see Raymond v. Commissioner, 119 T.C. 191 (2002), and, under the circumstances, lacks sufficient merit to warrant further consideration.

person who prepared petitioner's separate return, and petitioner's divorce attorney coordinated the filing of the joint return. Petitioner, therefore, either possessed actual knowledge that a portion of the liability reported on that joint return was not paid, or such knowledge is imputed to her. The separate return contains a number of errors that resulted in a refund to petitioner to which she was not entitled.[5] The refund that petitioner received was, in effect, recaptured on the joint return by reducing the amount of withholdings attributable to Mr. Weight. Set against the factors in Rev. Proc. 2000-15, supra, the facts and circumstances of this case indicate that it would not be inequitable to hold petitioner liable for the portion of her 1996 Federal income tax liability that remains unpaid.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.

---

[5] In her brief, petitioner acknowledges that the separate return contains deductions to which she might not be entitled, but she points out that the elimination of those deductions would not increase her tax liability. Petitioner, however, ignores that, because she was married as of the close of 1996, she was not entitled to file as head of household. See sec. 2(b). Her proper filing status for purposes of her separate return was married filing separately. Consequently, she was not entitled to the earned income credit. See sec. 32(d).